IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KATHLEEN EMMA CAMARENA, | CV 17-44-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

On April 8, 2017, plaintiff Kathleen Emma Camarena ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 2.)  On June 12, 2017, the Commissioner filed the Administrative Record ("A.R.").  (Doc. 6).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits.  (Doc. 13.)  The Commissioner submitted a response brief on

October 11, 2017 (Doc. 14.); Plaintiff filed a reply on February 7, 2018.  The

motion is fully briefed and ready for decision.  (Doc. 19.)

For the reasons set forth herein, and after careful consideration of the record

and the applicable law, the Court finds the case should be **REMANDED** for

further administrative proceedings

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits and an

application for supplemental security income benefits in October 2013.  (A.R. 279-

290.)  Plaintiff alleges she has been unable to work since August 8, 2013.  (A.R.

281.)  The Social Security Administration denied Plaintiff's application initially on

March 6, 2014, and upon reconsideration on July 24, 2014.  (A.R. 218-220; 224-

228.)

On August 5, 2014, Plaintiff filed a written request for a hearing.  (A.R. 229-

230.)  Administrative Law Judge Michael Kilroy (the "ALJ") held a hearing on

June 10, 2015.[1]  (A.R. 32-85.)  On July 29, 2015, the ALJ issued a written decision

finding Plaintiff not disabled.  (A.R. 8-31.)

---

[1] Plaintiff filed a previous disability application, which was denied on August 8,
2013.  (A.R. 197-217.)  This previous application is not material to the issues
presently before the Court, but the ALJ uses Plaintiff's prior hearing on June 10,
2013, to limit the pertinent time-frame of Plaintiff's present complaints.  The Court
will refer to the prior hearing as the "2013 hearing" where necessary.

Plaintiff requested review of the decision on September 10, 2015. (A.R. 7.) The ALJ's decision became final on February 15, 2017, when the Appeals Council denied Plaintiff's request for review. (A.R. 1-6.) Thereafter, Plaintiff filed the instant action.

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to

support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.      Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve

months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step.  *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.  FACTUAL BACKGROUND

### A.  The Hearing

A hearing was held before the ALJ on June 10, 2015, in Billings, Montana, and the following testimony was provided.

#### 1.  Plaintiff's Testimony

Plaintiff was 47 years old at the time of her hearing, and described herself as 5'4" tall and weighing 214 pounds.  She is right-handed.  (A.R. 41.)  Plaintiff lives in a basement apartment in Forsyth, Montana with her boyfriend.  (A.R. 41-42.)

Plaintiff has an associate's degree in medical assisting, but has never worked in that field.  (A.R. 42.)  Plaintiff knows how to use a computer, and has used one in a work setting.  (A.R. 43.)

Plaintiff has not worked full-time since the 2013 hearing.  (A.R. 43.)  She has done some part-time work, however, and was working as a short-order cook and bartender at the time of the hearing.  (A.R. 43.)  She testified that she works 3 days per week for durations of 7 hours (1 day) and 5 to 5.5 hours (2 days).  The 5-hour shifts are bartending shifts, and the 7-hour shift is cooking.  (A.R. 44.)

While cooking, Plaintiff testified she is on her feet approximately three-quarters of the time.  (A.R. 44.)  Plaintiff's boyfriend is her prep cook, and he will take over cooking duties when she gets too tired or hurts too much to continue standing.  (A.R. 46.)  She lifts plates and dishes of food while cooking, which she estimates to be only "a couple pounds."  (A.R. 44, 57-58.)  Nevertheless, Plaintiff testified she has difficulty cooking "because of dropping things and holding things," and said she has dropped platefuls of food, cups, spatulas, and cooking utensils.  (A.R. 52.)

During her bartending shifts, Plaintiff spends approximately one-half of her time on her feet.  (A.R. 44.)  There is a stool behind the bar where Plaintiff can sit when she is not serving drinks.  (A.R. 47.)  Plaintiff's coworkers stock coolers for

her because the coolers are "down low," and she is physically unable to stock them.  (A.R. 45-46.)  She testified "[a] can of beer" is the heaviest thing she lifts while bartending.  (A.R. 44-45.)

Plaintiff gives 1 or 2 shifts per week to a coworker because she "can't work there," is "too tired," and "hurt[s]."  (A.R. 46.)  She also has to leave work early on occasion due to pain and fatigue, but could not recall how many times she has done so.  (A.R. 51-52.)  She testified that she would not be able to work as a cook 4 or 5 days per week.  She has tried to work more cooking shifts in the past, and that resulted in increased hand pain and swelling.  (A.R. 62.)

Plaintiff attempted to drive a beet truck, but only lasted 1 day.  (A.R. 47.)  She was unable to perform the job due to the required frequency of getting in and out of the truck.  (A.R. 47.)  She also reported feeling anxious while driving.  (A.R. 48.)

Plaintiff also attempted work as a housekeeper.  (A.R. 48.)  She could not recall how long she attempted that job, but she reported that "it got to the point I hurt so bad, one day I just couldn't get up off the floor, after cleaning out a bathtub."  (A.R. 48.)

Plaintiff stated that her pain is "worse in the morning, and at night after working, after doing anything."  (A.R. 48.)  Plaintiff testified her feet felt "like

bone-on-bone" at the hearing. (A.R. 60.) She attributes the pain in her feet to rheumatoid arthritis. (A.R. 60.) She also has pain in her hands, such that she cannot wash her hand 4 or 5 days per week. (A.R. 61.) When asked how she is able to perform her job as a cook given the pain in her hands, Plaintiff responded, "[t]rying to figure out how to say this; it's just I have to. I make myself – I don't know how to explain it." (A.R. 61-62.)

Plaintiff reports rising from sleep at different times on an average workday, and says she usually wakes up two or three times per night. (A.R. 52-53.) She may get out of bed and then take another nap, but she finally leaves bed for work around 2:00 or 2:30 p.m. (A.R. 53.) If she gets out of bed in the morning, she will communicate with her children or go outside and smoke. (A.R. 53.)

Plaintiff works five or six blocks from her home. She drives to work because she is physically unable to walk that far. (A.R. 53-54.) She typically is home by 9:30 or 10:00 p.m., and goes straight to bed. (A.R. 54.) Plaintiff testified that she does not eat very much because she does not "have an appetite." (A.R. 54.)

Plaintiff's shifts at work typically are staggered, such that she does not work multiple days in a row. (A.R. 55.) The day after she works is spent mostly in bed, with breaks to use the restroom, get coffee, and use the computer. (A.R. 55.) She

spends "[n]o more than 20, 30 minutes" on the computer due to "[t]he sitting, the typing." (A.R. 55.)

Plaintiff does not perform many household chores, even on non-workdays. (A.R. 55-56.) She does the dishes "every once in a while," and cooks meals that she can make in a microwave. (A.R. 56.) Her boyfriend performs other household chores. (A.R. 56.) Plaintiff lived with her sister at times pertinent to this appeal, but she did not perform any additional chores in that living arrangement. (A.R. 56.) Plaintiff also lived alone at times, but instead of doing chores she testified she "let everything go for a very long time." (A.R. 56.) She does not perform chores on non-workdays because she is sore and tired from working the day before, citing specifically pain in her hands, neck, shoulders, knees, hips, and "[j]oints, all of them." (A.R. 56-57.)

Plaintiff is also being treated for depression. (A.R. 62.) Plaintiff said that she goes to treatment because she "don't want to do this no more," clarifying upon questioning from her attorney that she means she does not want to live with pain anymore. (A.R. 63.) She has missed work in the past because she did not want to get out of bed, although her present medications are helping with her depression symptoms. (A.R. 63-64.) Despite the improvement, Plaintiff reports still having "crying spells," which she attributes to "just the frustration of not knowing, you

know.  What can I do, you know?  Can I make it better?"  (A.R. 64.)  Plaintiff also reports anxiety while driving, although she generally can drive around Forsyth. (A.R. 64.)

Plaintiff attends mental health treatment in Forsyth, Montana.  (A.R. 50.) Her attorney questioned her about some missed appointments with counselor Timothy Dove.  Plaintiff explained that her missed appointments are "usually a bad pain day where I can't get there."  (A.R. 50.)

Plaintiff uses marijuana "once or twice a week."  (A.R. 49.)  She explained that she uses it with that frequency because she cannot afford to use it more often and does not have a medical marijuana card.  (A.R. 49.)  She reports that marijuana helps her relax so she can sleep at night, and that she uses it before she goes to bed. (A.R. 49.)  There was a point during which Plaintiff was using marijuana daily; she could not recall when that was, but testified it "was a while ago, I think."  (A.R. 49-50.)  She estimates that she spends $20.00 per month on marijuana.  (A.R. 50.)

Plaintiff was asked about records indicating that "either you or your daughter, or somebody" was gambling excessively.  Plaintiff denied having any such issues, and said that a "big month" of gambling spending would be around $10.  (A.R. 50-51.)

Plaintiff testified she cannot sit for prolonged periods due to pain in her hips. (A.R. 59.)  She stated that she can only sit "maybe 5 minutes" before needing to stand up.  (A.R. 59.)  On non-workdays, Plaintiff lays and stands, as opposed to sitting and standing, because laying down does not hurt her hips as much as sitting. (A.R. 59-60.)

Plaintiff does go to the movies with her boyfriend once a month.  (A.R. 68.) Plaintiff's boyfriend has attempted to get her out of the house more often, including purchasing a fishing license for her.  (A.R. 68.)  But she does not like riding in a car because of her anxiety.  The ALJ asked Plaintiff the difference between sitting in a car and going for a drive versus sitting at home.  Plaintiff responded, "I don't know.  In a car, I feel like I want to jump out, like if it's moving.  I don't – I don't want to be in that car when it's moving."  (A.R. 69.)

Plaintiff does not watch television because her pain is all that she can focus on.  (A.R. 66.)  Plaintiff's attorney asked her about a specific doctor who "sort of challenged [her] with that," suggesting that Plaintiff do something else to distract herself from the pain because it is all she was thinking about.  (A.R. 66.)  Plaintiff acknowledged she has not attempted to do so, and she did not ask the doctor for any ideas on how to implement the strategy.  (A.R. 66.)

/ / /

### 2. Medical Examiner's Testimony

Dr. Martin is a clinical psychologist, and served at Plaintiff's hearing as a medical examiner (the "ME"). (A.R. 69.) She reviewed Plaintiff's file and listened to her testimony, but did not have any other involvement with Plaintiff or her case. (A.R. 69.) The ME questioned Plaintiff, resulting in the following testimony.

The ME asked Plaintiff about a treater's recommendation that Plaintiff perform various coping exercises, such as deep breathing and mindfulness techniques in order to manage her anxiety and allow her to get outside the house more often. (A.R. 70.) Plaintiff said she forgot what the exercises were, and forgot to ask the treater the next time she saw him. (A.R. 70.) The ME also noted that Plaintiff's complaint of anxiety while riding in the car does not appear in the records. Plaintiff said she "mostly talk[s] to Laura [Wetherelt] about that." (A.R. 70.)

The ME also presented the following testimony on questioning from the ALJ. Plaintiff's medical records reveal the following diagnoses: a pain disorder associated with both psychological factors and a general medical condition, that the ME believes is not well-supported; major depressive disorder, recurrent, moderate (though other records indicate mild and severe); and depressive disorder,

not otherwise specified.  (A.R. 71-72.)  Plaintiff's records reflect a mild impairment in activities of daily living due to mental health issues, although the ME reported that Plaintiff may be more impaired due to physical issues.  Plaintiff has mild-to-moderate impairment in social functioning; she gets along well with others and does not report anger or irritability, but she does report anxiety around large crowds of people.  Plaintiff has moderate impairment on concentration, persistence, and pace.  Plaintiff has no episodes of decompensation.  (A.R. 72-73.)

The ME presented the following testimony on questioning from Plaintiff's attorney.  Plaintiff's attorney asked the ME to assume that all of Plaintiff's missed days at work resulted from her mental health issues, such that she "can't get out of bed because of depression, at least once a week."  (A.R. 74.)  The ME said that would change her assessment of Plaintiff's concentration, persistence, and pace from moderate to marked.  (A.R. 74.)

### 3.    Vocational Expert's Testimony

Delane Hall, a Vocational Expert (the "VE"), also testified before the ALJ.  (A.R. 75-83.)  First, the ALJ asked the VE to assume a person with the following characteristics: a woman in her 40s; has an associate's degree but has not used the degree in a particular job; has some computer background; can walk and/or stand for 4 hours in an 8-hour day; can sit for 30 minutes at a time, and for up to 6 hours

in an 8-hour day; can lift 10 pounds occasionally, and less than 10 pounds frequently; can reach overhead occasionally, and only up to 1 pound; can never crawl, climb ladders and/or scaffolding, or be exposed to extreme cold or vibrations; can perform all other positional activities occasionally; and cannot perform jobs requiring repetitious use of bilateral upper extremities throughout an 8-hour workday, but can still use the bilateral upper extremities frequently.  (A.R. 78.)  The VE responded that such a person could perform Plaintiff's past work of customer service.  (A.R. 78-79.)

Second, the ALJ asked the VE to assume the same person as the first hypothetical with the following added mental health limitations: public involvement with small groups ("three-sies") occasionally, and one-on-one frequently; no jobs that require a high constant focus throughout an 8-hour day, such as an assembly line conveyor belt job; no jobs with high constant stress, such as a production job with a high quota; and no more than occasional learning.  (A.R. 79.)  The VE said such a person would be able to perform the following jobs: lost charge card clerk, information clerk, and document preparer.  (A.R. 79-80.)

The ALJ then asked the VE to assume the same person as the most recent hypothetical (with the mental health issues included), but who has marked

limitations in concentration, persistence, and pace. The VE said such a person could not work at the substantial gainful activity ("SGA") level. (A.R. 80.)

Next, the ALJ asked whether an individual who, for any reason (physical, mental, or a combination), would need (1) 10 minutes or more added to the two, 15-minute breaks normally allowed during a shift, and/or more than the 30-to-60-minute mid-shift break, on at least an occasional basis, and/or (2) would miss more than two workdays per month on at least an occasional basis would be able to work at the SGA level. The VE responded that the person would not be able to work. (A.R. 80.)

The VE provided the following additional testimony upon questioning by Plaintiff's counsel. Swapping shifts with a coworker would not be cause for concern, but an employer may grow tired of an employee constantly giving away shifts after a few months. (A.R. 81.) But missing work once a week would be a problem in all of the jobs the VE suggested. (A.R. 83.)

/ / /

/ / /

/ / /

/ / /

/ / /

**B.     Medical Evidence**

The A.R. also includes the following pertinent medical records.  Additional records may be discussed below as appropriate.

**1.     Treating Non-Physician Evidence**

**a.     Laura Wetherelt, MSN, NP-C**

Ms. Wetherelt is a certified nurse practitioner who treated Plaintiff at Eastern Montana Community Mental Health Center.  At the request of Plaintiff's prior attorney, Ms. Wetherelt submitted a letter discussing Plaintiff's impairments and their bearing on Plaintiff's ability to work.  (A.R. 784.)  Ms. Wetherelt's letter does not provide an explicit opinion that Plaintiff cannot work, nor does it provide an opinion that Plaintiff can only work at a reduced capacity.  Nevertheless, the letter does contain the following statements that generally relate to Plaintiff's ability to work:

- "To my knowledge, [Plaintiff] has been able to work as much as she has because she has often had an alternate day schedule wherein she works one day and has the next day off."

- "It is very difficult to find an employer who will work with an employee who needs an alternate day schedule because the needs of the employer's business are paramount."

- "[Plaintiff] has also worked shortened shifts, as she cannot tolerate being on her feet for 8 hours due to pain."

- "[Plaintiff] is currently under treatment for rheumatoid arthritis and lupus with immunosuppressants.  These medications have caused [Plaintiff] to have chronic nausea and anorexia, as well as compounding her fatigue.  All of these symptoms make it difficult to maintain employment, and the use of such medications leaves her at risk of further complications."

- "Fibromyalgia also causes chronic pain, fatigue, and clouded mentation which makes it difficult to concentrate and to work."

- "[Depression] causes psychomotor retardation which will interfere with ability [sic] to move at all, much less work."

- "The fact that [Plaintiff] has been working is partly due to medication and partly due to will to survive."

(A.R. 784.)

### 2.    Examining Physician Evidence

#### a.    F. Tom Peterson, EdD

Dr. Peterson is a licensed clinical psychologist who conducted a consultative examination of Plaintiff.  He submitted a Mental Status Evaluation on February 11, 2014.  (A.R. 440-451.)  Pertinent to this appeal, Dr. Peterson provided the

following statement as to whether Plaintiff is able to engage in work-related activity:

> [Plaintiff] is currently working part time.  However, she presents as psychologically somewhat (moderately)[2] fragile as defined by features of depression and reported mood dysregulation.
>
> (This examiner notes that [Plaintiff] underwent a complete hysterectomy at the age of 35, but does not report taking hormone replacement medication, the lack of which may be contributory to problems with mood and sleep.)
>
> Medical opinion is required as to physical barriers to work-related activity.

(A.R. 451.)   Dr. Peterson's statement does not contain any other opinions related to Plaintiff's ability to work.

### 3.      Non-Examining Physician Evidence

### a.      Rafael Olivares, MD

Dr. Olivares reviewed Plaintiff's medical records, but did not examine her, and did not testify at the hearing.  He issued an opinion on October 2, 2013.  (A.R. 143-156.)  Dr. Olivares opined that Plaintiff could lift and carry 20 pounds

---

[2] The word "(moderately)" (parentheses in original) is hand-written with an arrow pointing to the word "fragile."  The document otherwise is type-written (with the exception of Dr. Peterson's signature).  As neither the ALJ nor the Commissioner raised any concerns about the modification, the Court assumes it to be undisputed that Dr. Peterson intended the hand-written word to modify his statement after it was printed.

occasionally and 10 pounds frequently.  (A.R. 150.)  Dr. Olivares found Plaintiff

can stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-

hour work day, provided she periodically alternates sitting and standing to relieve

pain and discomfort.  (A.R. 150.)  Dr. Olivares also stated Plaintiff can perform

unlimited pushing/pulling and balancing; frequently climb ramps/stairs, stoop,

kneel, crouch, and crawl; and occasionally climb ladders/ropes/scaffolds.  (A.R.

151.)  She should avoid even moderate exposure to hazards.  (A.R. 152.)  He

ultimately concluded that Plaintiff is not disabled.  (A.R. 155.)

### b.      Mark Berkowitz, PsyD

Dr. Bewrkowitz reviewed Plaintiff's medical and mental health records, but

did not examine her, and did not testify at the hearing.  He issued an opinion on

October 2, 2013.  (A.R. 143-156.)  Dr. Berkowitz assessed Plaintiff as suffering

from affective disorders.  (A.R. 149.)  Dr. Berkowitz determined Plaintiff has mild

restriction of activities of daily living; mild difficulties in maintaining social

functioning; moderate difficulties in concentration, persistence, or pace; and no

repeated episodes of decompensation.  (A.R. 149.)  Dr. Berkowitz found Plaintiff

to be moderately limited in the following areas: the ability to understand and

remember detailed instructions; the ability to carry out detailed instructions; the

ability to maintain attention and concentration for extended periods; the ability to

perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (A.R. 153.) He did not find her to have marked limitations in any area.

### c. William Fernandez, M.D., and Robert Bateen, Ph.D.

Dr. Fernandez and Dr. Bateen reviewed Plaintiff's records at the reconsideration phase. (A.R. 173-184.) Dr. Bateen affirmed Dr. Berkowitz's findings as written. (A.R. 179.) Due to Plaintiff's new complaints of increased pain and numbness in her hands and feet in the time since the prior opinion, Dr. Fernandez altered Dr. Olivares' opinion as follows: Plaintiff can stand or walk for 4 hours in an 8-hour workday; can frequently balance; and can occasionally stoop. (A.R. 181-182.) She should avoid concentrated exposure to extreme cold. (A.R. 182.) Despite these alterations, he ultimately concluded that Plaintiff is not disabled. (A.R. 184.)

### C. The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 8, 2013. (A.R. 14.) Second,

the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia; lupus; rheumatoid arthritis; degenerative disc disease; obesity; and depression." (A.R. 15-16.) Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal any one of the impairments in the Listing of Impairments. (A.R. 16-19.) Fourth, the ALJ stated Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff] has the capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that [Plaintiff] is capable of standing and/or walking for up to four hours in a given workday. [Plaintiff] may also sit for up to 60 minutes at a time, totaling up to six hours, in a given workday. [Plaintiff] only [sic] reach overhead on an occasional basis, and [] may do so only with weights of approximately one pound. [Plaintiff] may not engage in crawling or climbing of ladders, ropes, or scaffolds. However, [Plaintiff] may occasionally bend, stoop, crouch, kneel, or climb ramps and stairs. [Plaintiff] should avoid concentrated exposure to vibrations and extreme cold. [Plaintiff] is not capable of work requiring repetitious use of the bilateral upper extremities throughout an eight-hour workday, but [] is capable of performing this activity on a frequent basis. [Plaintiff] is able to interact with small groups on an occasional basis, and she may frequently interact with others on a one-on-one basis. [Plaintiff] is not able to perform jobs requiring constant focus throughout an eight-hour workday. Nor is [Plaintiff] capable of performing jobs with high and constant stress, such as production type jobs with high production quotas, and [Plaintiff] cannot engage in more than occasional learning to perform her work.

(A.R. 19-24.) The ALJ next found that Plaintiff was not able to perform any past relevant work. (A.R. 24-25.) However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

including lost charge card clerk, information clerk, and document preparer.  (A.R. 25-26.)  Thus, the ALJ found that Plaintiff is not disabled.  (A.R. 26.)

## IV.  DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to give proper weight to the medical providers' opinions; (2) failing to provide clear and convincing reasons for discounting Plaintiff's credibility; (3) failing to consider Plaintiff's activities of daily living; (4) failing to properly consider lay testimony; and (5) failing to ask the VE if his testimony was consistent with the Dictionary of Occupational Titles.

The Commissioner argues the ALJ gave proper weight to the medical providers' opinions, provided sufficient clear and convincing reasons for discounting Plaintiff's credibility, properly considered Plaintiff's activities of daily living, properly considered lay testimony, and did not err with respect to any questions posed to the VE.

### A.    The ALJ's Evaluation of the Medical Source Opinions

Plaintiff contends that the ALJ failed to give proper weight to the opinions of Dr. Peterson and Ms. Wetherelt.

#### 1.    Dr. Peterson

Plaintiff argues that the ALJ failed to give proper consideration to Dr. Peterson's opinion, but Plaintiff does not identify any germane opinion that the

ALJ failed to credit. The ALJ found that "the objective findings in Dr. Peterson's report were greatly considered in reaching this decision." (A.R. 22.) He noted, however, that the only statement of opinion in Dr. Peterson's report related to a Global Assessment of Functioning (GAF) score. The ALJ found "[t]his statement of opinion does little to present specific limitations that [Plaintiff] experiences, which could be incorporated into her residual functional capacity." (A.R. 22.)

Nevertheless, Plaintiff contends that the ALJ failed to consider Dr. Peterson's statement that although Plaintiff was currently working part-time, "she presents as psychologically somewhat (moderately) fragile as defined by features of depression and reported mood dysregulation." (A.R. 451.) But even crediting all of that as true, there is nothing in this statement that can be read as an opinion that Plaintiff is incapable of working at the SGA level, or as a limitation that could be considered in Plaintiff's residual functional capacity.

Plaintiff also appears to fault the ALJ for commenting on one GAF score of 61 relative to financial and vocational domains, but not another score of 52 relative to health (mental and physical). But the ALJ commented separately as to all of the GAF scores in the record, noting that they ranged from 48 to 65. (A.R. 24.) The ALJ made clear the GAF scores were all considered "but carried little weight in reaching the [Plaintiff's] true limitations. (A.R. 24.)

Therefore, the Court finds that Dr. Peterson did not issue any opinion that the ALJ failed to credit, and therefore the ALJ did not err with respect to Dr. Peterson.

### 2. Ms. Wetherelt

At the time Plaintiff's claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2) "other sources," which includes nurse practitioners, physician's assistants, therapists, and counselors. 20 C.F.R. 416.913(a), (d) (amended March 27, 2017). *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. Nov. 7, 2017) (noting that prior to March 27, 2017, opinions of "other sources," such as nurse practitioners were not given the same weight as a physician's opinions). Opinions of "other sources," are not entitled to the same deference. *Molina v. Astrue*. 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ may discount opinions from "other sources" if the ALJ gives "germane reasons" for doing so. *Id.*

As a certified nurse practitioner, Ms. Wetherelt is not an acceptable medical source but is rather an "other" source. 20 C.F.R. § 404.1513(d); *see also Vega v. Colvin*, 2015 WL 7769663, *12 (S.D. Cal. Nov. 12, 2015) ("Nurse practitioners are

not considered 'acceptable medical sources' under 20 C.F.R. § 416.913.  Instead, nurse practitioners are considered 'other sources.'").

The fact that Ms. Wetherelt is not an acceptable medical source is not, in and of itself, a germane reason to afford her opinion lesser weight, especially where the ALJ concedes that her opinion is consistent with the evidence in the record. *Haagenson v. Colvin*, 656 Fed.Appx. 800, 802 (9th Cir. 2016) ("The only reason that the ALJ offered for rejecting their opinions is that they are not 'acceptable medical sources' within the meaning of the federal regulation.  However, the regulation already presumes that nurses and counselors are non-acceptable medical sources, yet still requires the ALJ to consider them as 'other sources.'")

Plaintiff claims that Ms. Wetherelt "opined [Plaintiff] was able to work part time because she worked alternating days" (Doc. 13 at 3), but that is not exactly what Ms. Wetherelt wrote.  Rather, Ms. Wetherelt actually wrote, "[t]o my knowledge, [Plaintiff] has been able to work as much as she has because she has often had an alternate day schedule wherein she works one day and has the next day off."  (A.R. 784.)  "To my knowledge" and "in my opinion" are not synonymous phrases, and the Court does not find, as Plaintiff insists, that Ms. Wetherelt was stating an opinion that Plaintiff is only capable of working on an alternate-day schedule.

In addition, the ALJ did discuss Ms. Wetherelt's written statement and gave great weight to her opinion that Plaintiff "cannot tolerate being on her feet for eight hours due to pain." (A.R. 23.) But the ALJ discounted Ms. Wetherelt's other statements regarding Plaintiff's ability to be employed, explaining that "[t]he majority of Ms. Wetherelt's opinion in this statement relates to the employability of [Plainitff] in the job market" and that "there is no indication in the record to suggest that Ms. Wetherelt is qualified to opine on such a matter." (A.R. 23.)

Given that Ms. Wetherelt is a nurse practitioner and not a vocational expert, this constitutes a germane reason to discount Ms. Wetherelt's opinions regarding Plaintiff's employability. The Court therefore finds that the ALJ did not err with respect to Ms. Wetherelt.

## B.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ did not provide clear and convincing reasons for rejecting her testimony. Plaintiff further argues that her testimony was fully supported by the objective medical evidence. The Commissioner counters that the ALJ properly evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine

whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.*

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

Here, the first step of the credibility analysis is not at issue. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering. Therefore, the ALJ was required to cite specific, clear and

convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her impairments.

The Court finds the ALJ provided three specific, clear, and convincing reasons for discrediting Plaintiff's testimony. First, he identified several of Plaintiff's allegations regarding her medical impairments and pain, and cited specific medical records that contradict Plaintiff's claims. (A.R. 21.) Plaintiff cites (and the ALJ acknowledged) other medical records that support, rather than contradict, her claims. But the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Rather, it "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995). It was not error for the ALJ to cite specific records that contradict Plaintiff's testimony, even where other records may have supported it.

Next, the ALJ discredited Plaintiff's testimony because she was untruthful to at least one medical provider regarding her drug use. (A.R. 22; *see also* A.R. 530.) Though Plaintiff points to other medical records indicating that Plaintiff was truthful with respect to her drug use, she does not deny that she was untruthful at least in the instance the ALJ identifies. This also constitutes a specific, clear, and convincing reason for finding her less credible. *Thomas*, 278 F.3d at 958-959.

Finally, the ALJ discredited Plaintiff's testimony because medical records indicated that she failed to comply with her treatment recommendations. (A.R. 22-23; *see also* A.R. 590.) Failure to follow a prescribed course of treatment is a specific finding sufficient to discredit a plaintiff's testimony. *Fair v. Bowen*, 885 F.2d 597, 603-604 (9th Cir. 1989). Though Plaintiff argues that the records do not support this finding, Plaintiff admitted at her hearing to at least one circumstance where she has failed to comply with a treatment suggestion and failed to follow up with her treater when she forgot what he had told her. (A.R. 66, 70.)

For the foregoing reasons, the Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff less credible.

### C.      The ALJ's Consideration of Plaintiff's Activities of Daily Living

Plaintiff contends that the ALJ failed to consider her activities of daily living and the extent to which they support her subjective testimony. The Commissioner responds that the ALJ indicated that he considered the entire record, and that he was under no obligation to discuss every aspect of the record. The Court agrees with the Commissioner.

As noted by Plaintiff, however, the ALJ did discuss Plaintiff's activities of daily living when considering Plaintiff's mental impairment. (A.R. 17.) In addition, the ALJ outlined and discussed Plaintiff's testimony regarding her

physical symptoms and her resulting functional limitations. (A.R. 20.)

Nevertheless, the ALJ determined that Plaintiff's statements regarding the limiting

effects of these symptoms were not entirely credible. *Id.* As the Court has already

determined, the ALJ provided specific, clear, and convincing reasons for

discrediting Plaintiff's testimony.

The ALJ could have reviewed the record more favorably for the Plaintiff.

Again, however, the Court may not substitute its judgment for that of the ALJ.

The ALJ did not err for by failing to consider Plaintiff's activities of daily living.

**D.      The ALJ's Consideration of Lay Witness Testimony**

Plaintiff argues that the ALJ failed to give proper consideration to the lay

witness statements provided by Plaintiff's sister and coworker. (*See* A.R. 345-353,

408.) The Commissioner argues the ALJ reasonably discounted the lay testimony.

"Lay testimony as to a claimant's symptoms or how an impairment affects

the claimant's ability to work is competent evidence that the ALJ must take into

account. We have held that competent lay witness testimony *cannot* be

disregarded without comment, and that in order to discount competent lay witness

testimony, the ALJ must give reasons that are germane to each witness." *Molina*,

674 F.3d at 1114 (citations and quotations omitted) (emphasis in original).

Especially germane to this case, "[d]isregard of the testimony of friends and family

members violates 20 C.F.R. § 404.1513(e)(2)(1991).  According to that regulation, the Commissioner will consider observations by nonmedical sources about how impairments affect a claimant's ability to work."  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

Here, the only reason the ALJ provided for discounting the lay witness statements was that "the personal nature of [Plaintiff's] relationship with [the lay witnesses] may color the objectivity with which they offer their statements," essentially finding that their statements were not credible based on the potential for bias toward Plaintiff.  (A.R. 24.)  That is not a sufficient reason for discounting lay testimony where, as here, "there is no evidence that the lay witnesses were influenced by a desire to help the plaintiff.  Absent actual evidence that the lay witnesses were motivated by a desire to help the plaintiff, this is not a germane reason to discount their testimony."  *Mercer ex rel. Mercer v. Astrue*, 2010 WL 4511132, *5 (W.D. Wash. Sept. 24, 2010) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009) (noting that lay witnesses may not be dismissed out of hand because they are inclined to be partial to the claimant, rather the ALJ must point out "evidence that a specific [witness] exaggerated a claimant's symptoms *in order* to get access to his disability benefits"); *Ratto v. Sec'y, Dept. of Health & Human Servs.*, 839 F.Supp. 1415, 1428-29 (D. Or. 1993) ("By definition,

every claimant who applies for [disability] benefits does so with the knowledge- and intent-of pecuniary gain.  That is the very purpose of applying for [disability] benefits....  If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible.")).

Accordingly, the Court finds that the ALJ erred by failing to consider the lay witness testimony for the sole reason that the witnesses had close personal relationships with Plaintiff.  Nevertheless, the Court finds the error was harmless under the particular circumstances of this case.

An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination."  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  The Ninth Circuit has explained that "where the ALJ's error lies in the failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  Nevertheless, where the ALJ rejects a lay witness's testimony without providing germane reasons, but has given adequate reasons for rejecting similar testimony by the claimant or another

witness, the ALJ's failure to discuss the lay witness testimony is harmless. *Molina*, 674 F.3d at 1116, 1121-22. *See also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Here, the testimony of Ms. Howman and Ms. Davis was substantially similar to Plaintiff's testimony. Plaintiff testified that once or twice a week she gives her shifts to her co-worker because she is too tired or in too much pain to work. (A.R. 46.) Ms. Davis likewise stated that she is called in to cover Plaintiff's shifts at least once a week, and typically twice per week because Plaintiff is tired and in pain. (A.R. 408.)

Plaintiff also testified that she does not perform many household chores due to her pain, but she is able to cook simple meals in a microwave. (A.R. 55-56.) Plaintiff reported waking up two or three times per night. (A.R. 52-53.) She stated she can use a computer, but only for 20 to 30 minutes at a time. (A.R. 55.) Plaintiff states she drives to work, which is 5 or 6 blocks from her house, because it is too far for her to walk. (A.R. 53-54.) Plaintiff said she does not stock coolers at work because they are too low to the ground; she uses a stool when she has difficultly standing at work; and she has difficulty cooking at work because she drops things. (A.R. 45-47, 52.) Plaintiff also testified she works staggered days, and is unable to work increased shifts because it makes her hand pain worse. (A.R.

62.)  Plaintiff said she used to live with her sister, Ms. Howman, but it was too loud and she felt overwhelmed.  (A.R. 65.)

Similarly, Ms. Howman confirmed Plaintiff used to live with her, but it was very loud and Plaintiff would stay in her room.  (A.R. 352-53.).  Ms. Howman also stated that Plaintiff tries to help around the house, but she is unable to do so most of the time.  (A.R. 345, 352.)  Ms. Howman noted Plaintiff is "up and down" most nights.  (A.R. 345.)  She indicated Plaintiff uses a computer but for only 10-15 minutes at a time.  (A.R. 349.)  Ms. Howman opined that Plaintiff can only walk about 3 blocks, and indicated Plaintiff's condition affects her ability to lift, squat, bend, stand, sit, and use her hands.  (A.R. 350.)  Ms. Howman further opined that Plaintiff is unable to work more than 10 hours a week, and if she exceeds that, she ends up in significant pain.  (A.R. 352.)

The Court has already concluded that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  As such, the Court finds the ALJ's findings with respect to Plaintiff's testimony provides a sufficient basis for the ALJ's rejection of Ms. Howman and Ms. Davis's testimony.  *See e.g Valentine*, 574 F.3d at 694 (stating an ALJ may rely on the same reasons he gave for discounting the claimant's credibility when the lay witness has given similar testimony).

Accordingly, the Court finds the ALJ's error with regard to the lay witness testimony is harmless, and does not warrant reversal.

### E.    The ALJ's Reliance on the Vocational Expert's Testimony

Plaintiff argues the ALJ erred by not asking the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). The Commissioner asserts that any error in this regard is harmless because there was no conflict.

At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (emphasis in original). To aid in making this determination, the ALJ may consult a vocational expert to provide testimony about what jobs the claimant might be able to perform despite his or her limitations. *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).

Social Security Regulation 00-4p governs the use of vocational expert evidence in disability determinations, and states that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, *available at* 2000 WL 189704, *2.

The DOT is a resource compiled by the Department of Labor that details the

specific requirements for different occupations (classified by their exertional and

skill requirements) that exist in the national economy. 20 C.F.R. § 416.969. The

DOT is routinely used when considering the claimant's ability to perform other

work. SSR 00-4P at *2.

Therefore, before an ALJ may rely on a vocational expert's opinion, the ALJ

must ask the VE whether there is conflict between the VE's testimony and the

DOT requirements for a particular occupation. *Massachi v. Astrue*, 486 F.3d 1149,

1152-54 (9th Cir. 2007). If there is "an apparent unresolved conflict between VE .

. . evidence and the DOT," the ALJ "must elicit a reasonable explanation for the

conflict before relying on the VE" testimony to support a disability determination.

SSR 00-4P at *2; *Massachi*, 486 F.3d at 1152-53. The ALJ must also explain in

the decision how the ALJ resolved any such conflict. *Id.*

Here, the ALJ found Plaintiff had the RFC, in relevant part, to stand and or

walk "for up to four hours in a given workday," and "sit for up to 60 minutes at a

time, totaling up to six hours, in a given workday." (A.R. 19.) Plaintiff argues that

implicit in the RFC is a sit/stand/walk option. The Court agrees.

The Court finds the phrase "sit for up to 60 minutes at a time," implies

Plaintiff would need to alternate between sitting and standing and/or walking every

hour. As such, the RFC contemplates a sit/stand/walk option. Further, this sit/stand/walk option indicates Plaintiff's need to alternate positions would exceed the number of standard breaks available in a typical workday for sedentary work. *See* SSR96-9P, *available at* 1996 WL 374185 at *6-7 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. . . . Where [the need to alternate sitting and standing] cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.").

Social Security Regulation 83-12 directs that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." SSR 83-12, *available at* 1983 WL 31253, *4. Here, however, the ALJ did not ask the VE if his testimony was consistent with the DOT. Therefore, the ALJ erred. The question then turns to whether the error is harmless.

An ALJ's failure to inquire whether the VE's testimony conflicts with the DOT is harmless if the record shows no conflict exits, or the VE adequately explained any potential conflict. *Massachi*, 486 F.3d at 1154, n.19.

According to the DOT, the three jobs identified by the VE require the ability to perform sedentary work. *See* DOT §§ 209.367-034 (lost charge card clerk), 237.367.022 (information clerk), and 249.3687.018 (document preparer, microfilming) (all stating "[s]edentary work involves sitting most of the time, but may involve walking or standing for brief periods of time."). The DOT does not specifically address sit/stand/walk options. However, the DOT appears to be inconsistent with Plaintiff's need for a sit/stand/walk option (i.e., only sitting "for up to 60 minutes at a time." (A.R. 19.)

The Ninth Circuit has not definitively decided whether there is an apparent conflict between the DOT and a vocational expert's testimony that there are jobs available for a claimant who requires a sit/stand/walk option, and the district courts in this Circuit are split on the issue. *See Lester v. Berryhill*, 2017 WL 3610543, *4 (D. Mont. Aug. 22, 2017) (collecting cases). In light of the split of authority, the Court is persuaded there is substantial authority to find an apparent conflict between the VE's testimony that Plaintiff could perform the identified jobs and the DOT. Further, because neither the VE nor the ALJ acknowledged there was an apparent conflict, neither made any attempt to explain or justify whether the sit/stand/walk option eroded the occupational base of the representative jobs. Accordingly, the Court finds the ALJ's error is not harmless.

## V.     REMAND OR REVERSAL

Plaintiff asks the Court to remand this case further proceedings.  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall perform the appropriate inquires under SSR 00-4p.

/ / /

/ / /

/ / /

/ / /

/ / /

## VI.    CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 17th day of September, 2018.

TIMOTHY J. CAVAN
United States Magistrate Judge